Deborah VAUGHN, Elizabeth Williams, Deborah Seiler, Cynthia Islas, Rena Verdugo, Ida Russell, Marguerite Wheadon, Karen Hawkins, Marjorie A. Lopez, Jean Ishibashi, Barbara Takei, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The REGENTS OF the UNIVERSITY OF CALIFORNIA, a corporation, et al., Defendants.

Civ. No. S–75–733 RAR.

United States District Court, E. D. California.

Jan. 16, 1981.

---

Legal Aid Society of Sacramento County, Yolo County Law Office, Frank J. Ochoa, Jr., Directing Atty., Casey S. McKeever, Staff Atty., Dennis M. Lynch, Certified Law Student, Woodland, Cal., Legal Aid Society of Sacramento County, North Area Law Office, Loren Mitchell, Director of Litigation, Sacramento, Cal., for plaintiffs.

Noreen B. Mazelis, Davis, Cal., for plaintiffs Deborah Vaughn and Rena Verdugo.

Kathryn Conelly Decious, Sacramento, Cal., for plaintiffs Deborah Vaughn and Barbara Takei.

Joseph L. Russell, Sacramento, Cal., for plaintiff Ida Russell.

Donald L. Reidhaar, John F. Lundberg, Christine Helwick, Susan Amateau, Berkeley, Cal., for defendants.

## OPINION

MILTON L. SCHWARTZ, District Judge.

Plaintiffs, present and former employees of the University of California at Davis, are proceeding with an action brought pursuant to the Civil Rights Acts of 1870, 1871 and 1964, as amended, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 2000a et seq. They seek injunctive and monetary relief for the alleged violation of their right not to be subjected to employment discrimination on the basis of sex or race. The eleven named plaintiffs are all female; nine are members of ethnic minorities: blacks, Mexican or Hispanic Americans, and Asian Americans. Plaintiffs seek to represent a class of similarly situated females and minorities, but no decision on class certification has been made at this point of the litigation.

Defendants are the Regents of the University of California[1] and nineteen employees of the University.

On June 3, 1980, the court issued an order in which it, *inter alia,* found that the Regents of the University of California and the named defendants sued in their official capacities were entitled to invoke the Elev-

---

1. The Regents of the University of California is a corporation empowered to administer the public trust constituting the University of California. *See* Cal.Const., Article IX, § 9.

enth Amendment bar to plaintiffs' §§ 1981, 1983, 1985 and 1986 damage claims. Accordingly, the court granted defendants' motion for judgment on the pleadings as to plaintiffs' sixth, seventh, eighth, ninth, tenth, eleventh and twelfth claims for retrospective damages against defendant Regents and the individual defendants sued in their official capacities.

On September 18, 1980, this matter came before the court for hearing on plaintiffs' "motion for reconsideration to alter or amend order or, in the alternative, for certification pursuant to [FRCivP] 54(b) or 28 U.S.C. Section 1292(b)." Appearances were made by Casey S. McKeever, for plaintiffs, and by John F. Lundberg, for defendants.

█ District courts are authorized to reconsider, set aside or amend interlocutory orders at any time prior to final judgment. *See John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922); *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973); *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970); Wright and Miller, *Federal Practice and Procedure*, § 2852. Plaintiffs now move the court to exercise such authority and reconsider and alter or amend its prior ruling that the Regents and the individual defendants sued in their official capacities are entitled to invoke sovereign immunity under the Eleventh Amendment.[2] The court is of the opinion that plaintiffs' moving papers raise serious questions, and it will therefore re-examine the Eleventh Amendment issue.[3]

The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"While the Amendment by its terms does not bar suits against a State by its own citizens [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974), *citing Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Duhne v. New Jersey*, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

█ The fact that the state is not named as a party-defendant is of no consequence, for even though only state agencies or individual state officials are named as defendants,

when the action is in essence for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . . .

*Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), *quoted in Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 1148 n.17, 59 L.Ed.2d 358 (1979). Accordingly, when private parties seek to impose a liability which must be paid from public funds in the state treasury, the action is barred by the Eleventh Amendment, absent a waiver of the immunity. *See Quern v. Jordan, supra*, 99 S.Ct. at 1143; *Edelman v. Jordan, supra*, 94 S.Ct. at 1355.

In the case *sub judice*, plaintiffs seek to recover, *inter alia*, compensatory and punitive damages for alleged past violations of their civil rights. Pursuant to claims six through twelve of their second amended complaint, plaintiffs pray that the court award, *inter alia* :

damages to the named plaintiffs for violations of their civil rights;

---

**2.** In the June 3, 1980 order, the court also ruled that defendants had not waived the Eleventh Amendment immunity, and that the Regents was subject to suit under 42 U.S.C. § 1981. Plaintiffs do not seek reconsideration of either of these two rulings.

**3.** Much of the following discussion is taken verbatim from the June 3, 1980 order; it is repeated here for the purpose of clarity.

compensatory and punitive damages to class members for violation of their civil rights;

damages to plaintiffs Vaughn and Lopez for conspiracy to violate their civil rights;

damages to plaintiffs Vaughn and Lopez for failure to halt a conspiracy to violate their civil rights; and

punitive damages to the named plaintiffs for violation of their civil rights.

*See* Plaintiffs' Second Amended Complaint, at pages 107–08.

■ These damage claims brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986 are requests for monetary relief for past wrongful conduct, and are thus barred by the Eleventh Amendment if the State of California is the real party in interest. *See Quern v. Jordan, supra; Edelman v. Jordan, supra; Nasralah v. Barcelo*, 465 F.Supp. 1273 (D.P.R.1979); *Gill v. Monroe County Dept. of Social Services*, 79 F.R.D. 316 (W.D.N.Y.1978). The court must thus determine whether the entity sued herein, the Regents, is such an agency of the State of California that the State is in fact the real party in interest. *See Ford Motor Co. v. Department of the Treasury, supra* 65 S.Ct. at 350. If the §§ 1981, 1983, 1985 and 1986 damage claims against the Regents are barred by the Eleventh Amendment, those same claims against the employees of the University acting in their official capacities are likewise barred. *See Unified School District No. 480 v. Epperson*, 583 F.2d 1118, 1121 (10th Cir. 1978), *citing Ford Motor Co. v. Department of the Treasury, supra; West v. Keve*, 571 F.2d 158, 163 (3d Cir. 1978); *Prebble v. Brodrick*, 535 F.2d 605, 611 (10th Cir. 1976); *Bracco v. Lackner*, 462 F.Supp. 436, 448 (N.D.Cal.1978), *citing Edelman v. Jordan, supra*.

"In Eleventh Amendment cases the question of whether the state is 'the real party in interest' is one of federal law, but federal courts must examine the powers, characteristics and relationships created by state law in order to determine whether the suit is in reality against the state itself."

*Henry v. Texas Tech University*, 466 F.Supp. 141, 145 (N.D.Tex.1979), *quoting*

*Hander v. San Jacinto Junior College*, 519 F.2d 273, 279 (5th Cir. 1975).

"In determining whether a separate state agency or institution shares the Eleventh Amendment shield as an 'alter ego' of the state, a court must look to numerous factors, no one of which is conclusive. . . . The most important, of course, is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury . . . . Also to be considered is whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operations . . . ."

*Jackson Sawmill Co. v. United States*, 580 F.2d 302, 308 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), *quoting Fitzpatrick v. Bitzer*, 519 F.2d 559, 564 (2d Cir. 1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) [citations omitted]; *see also Hutchinson v. Lake Oswego School District No. 7*, 519 F.2d 961, 966 (9th Cir. 1975), *vacated on other grounds*, 429 U.S. 1033, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977); *George R. Whitten, Jr., Inc. v. State University Construction Fund*, 493 F.2d 177 (1st Cir. 1974).

The majority of federal courts which have considered the "alter ego" relationship of a state university to its state have concluded that a suit against the university is a suit against the state for purposes of the Eleventh Amendment. *See, e. g., Perez v. Rodriguez*, 575 F.2d 21 (1st Cir. 1978); *Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir. 1976), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Prebble v. Brodrick, supra; Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975); *Thonen v. Jenkins*, 517 F.2d 3 (4th Cir. 1975); *Brennan v. University of Kansas*, 451 F.2d 1287 (10th Cir. 1971); *Williams v. Eaton*, 443 F.2d 422 (10th Cir. 1971); *Walstad v. University of Minnesota Hosps.*, 442 F.2d 634 (8th Cir. 1971); *Weisbord v. Michigan State University*, 495 F.Supp. 1347 (W.D.Mich.1980);

*An-Ti Chai v. Michigan Technological University*, 493 F.Supp. 1137 (W.D.Mich.1980); *Zentgraf v. Texas A & M University*, 492 F.Supp. 265 (S.D.Tex.1980); *but see, e. g., Samuel v. University of Pittsburgh*, 538 F.2d 991 (3d Cir. 1976); *Dyson v. Lavery*, 417 F.Supp. 103 (E.D.Va.1976); *Gordenstein v. University of Delaware*, 381 F.Supp. 718 (D.Del.1974). However, the "weight" of the above-cited authority is not dispositive of the issue, as "the status of each university must be considered on the basis of its own peculiar circumstances." *Jacobs v. College of William and Mary*, 495 F.Supp. 183, 189 (E.D.Va.1980), *citing Soni v. Board of Trustees*, 513 F.2d 347, 352 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). The court must thus undergo an examination of the relevant factors as they pertain specifically to the Regents of the University of California.[4]

In weighing the pertinent factors, *see, e. g., Jackson Sawmill Co. v. United States*, *supra* at 308, the court recognizes that the Regents is a public corporation, *see* Cal. Const., Article IX, § 9(a), which has the power to sue and to be sued, *see* Cal.Const., Article IX, § 9(f), and to enter into contracts, *see* Cal.Education Code §§ 92436, 92437. Further, it is clear that the Regents has "virtual autonomy in self governance," *see Regents of the University of California v. City of Santa Monica*, 77 Cal.App.3d 130, 135, 143 Cal.Rptr. 276 (1978), and that " 'the [Regents] is intended to operate as independently of the state as possible,' " *see San Francisco Labor Council v. Regents of the University of California*, 26 Cal.3d 785, 789, 163 Cal.Rptr. 460, 608 P.2d 277 (1980), *quoting Regents of the University of California v. Superior Court*, 17 Cal.3d 533, 537, 131 Cal.Rptr. 228, 551 P.2d 854 (1976).

■ However, there are three factors which compel the conclusion that the Regents is the alter ego of the State of California for the purposes of the Eleventh Amendment. First, the members of the Board of Regents of the University are appointed by the Governor and approved by the Senate, *see* Cal.Const., Article IX, § 9(a), and thus the State retains a measure of control over the governing body of the University of California. *See, e. g., Perez v. Rodriguez*, *supra* at 25; *An-Ti Chai v. Michigan Technological University*, *supra* at 1163; *Zentgraf v. Texas A & M University*, *supra* at 271. Second, the Regents performs the essential governmental function of providing the citizens of the State of California with a higher education. Last, and most important, *see, e. g., Jackson Sawmill Co. v. United States*, *supra* at 308; *Hutchinson v. Lake Oswego School District No. 7*, *supra* at 966, any judgment obtained by plaintiffs against the Regents will have to be paid out of the *state* treasury or other sources of *state* funds.[5] "[T]he University of California partially relies upon legislative appropriations for its support,[6]" *California*

---

4. The court notes that although state courts have described the Regents as "a governmental agency," *see Estate v. Royer*, 123 Cal. 614, 619, 56 P. 461 (1899), "a statewide administrative agency," *see Ishimatsu v. Regents of the University of California*, 266 Cal.App.2d 854, 864, 72 Cal.Rptr. 756 (1968), and "a branch of the state itself," *see Regents of the University of California v. City of Santa Monica*, 77 Cal. App.3d 130, 135, 143 Cal.Rptr. 276 (1978), no California court has precisely defined the extent of immunity, if any, which the Regents enjoys, *see Regents of the University of California v. Superior Court*, 17 Cal.3d 533, 536, 131 Cal.Rptr. 228, 551 P.2d 854 (1976). The court must thus proceed with its own examination of the relevant factors.

5. The Eleventh Amendment immunity is not solely applicable to instances where payment would "be literally out of the general treasury,"

*Wade v. Mississippi Co-op. Extension Service*, 424 F.Supp. 1242, 1257 (N.D.Miss.1976); if payment will be made from "state-held funds" otherwise available to the state, an award of damages is barred by the Amendment, *id.* at 1256–57; *see also Com. of Pa. Dept. of Environ. Res. v. Williamsport*, 497 F.Supp. 1173, 1195 (M.D.Pa.1980); *Municipal Auth. v. Com. of Pa.*, 496 F.Supp. 686, 690–91 (M.D.Pa.1980); *Roberson v. Dale*, 464 F.Supp. 680, 689 (M.D.N. C.1979).

6. In fact, "support of the University, along with the rest of the state school system, is made a first charge on state revenues under [Article XVI, § 8] of the California Constitution." *California State Employees' Assn. v. Flournoy*, 32 Cal.App.3d 219, 232 n.7, 108 Cal.Rptr. 251 (1973).

**1354**

*State Employees' Assn. v. Flournoy,* 32 Cal. App.3d 219, 232 n.7, 108 Cal.Rptr. 251 (1973); insofar as a judgment obtained by plaintiffs would be satisfied out of funds derived from those legislative appropriations, it is apparent that the judgment would be paid out of the state treasury. Plaintiffs contend that the Regents has numerous other sources of funds at its disposal, from which the judgment could be paid; these sources include funds derived from the disposal of the University's personal or real property; the increasing of rates, rents and charges for the use of the University's facilities and services; and the increasing of tuition and admission fees.[7] *See* Plaintiffs' Closing Memorandum of Points and Authorities, at page 4; *citing* Cal. Education Code §§ 92431, 92433, 92449, 92010. However, plaintiffs overlook the fact that although the Regents is vested with legal title to the University's property, *see* Cal. Const., Article IX, § 9(f), "all [the University's] property is property of the state," *In re Bacon,* 240 Cal.App.2d 34, 47, 49 Cal. Rptr. 322 (1966), *quoting Estate of Royer,* 123 Cal. 614, 621, 56 P. 461 (1899); *see also* Stats. 1867–68, Chap. 244, p. 248; 61 Cal. Jur.3d, Universities and Colleges, § 138. Thus, although the Regents "might have the *power* to satisfy any judgment won by [plaintiffs], such judgment would inevitably have to be paid from 'state funds,'" *Roberson v. Dale,* 464 F.Supp. 680, 689 (M.D.N.C. 1979) [emphasis in original], *citing Edelman v. Jordan, supra* 94 S.Ct. at 1355; *Ford Motor Co. v. Department of the Treasury, supra* at 350, as all property over which the Regents has management and control is property belonging to the State of California.

On balance, the court remains of the opinion that the three factors discussed *supra* tip the scale in favor of a finding that the State of California is the real party in interest in the case *sub judice.* The court thus concludes that the Regents and the individual defendants sued in their official capacities are entitled to invoke the Eleventh Amendment immunity. This conclusion is supported by the only published opinion directly on point, *Selman v. Harvard Medical School,* 494 F.Supp. 603 (S.D.N.Y. 1980), wherein the Honorable Kevin Thomas Duffy ruled that the Regents was an agency of the State of California entitled to invoke the Eleventh Amendment immunity. *Id.* at 615 16. Accordingly, the court will reaffirm its prior ruling, and deny plaintiffs' "motion for reconsideration to alter or amend order."

■ In the alternative, plaintiffs move "for certification pursuant to [FRCivP] 54(b) or 28 U.S.C. § 1292(b)." Plaintiffs seek certification for immediate appeal of the instant order. FRCivP 54(b) provides, in pertinent part:

> When more than one claim for relief is presented in an action . . ., the court may direct the entry of final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay . . . .

"The portion of the Rule quoted above applies only to an action in which . . . one or more but fewer than all of the claims have finally been decided." *Purdy Mobile Homes v. Champion Home Bldrs.,* 594 F.2d 1313, 1316 (9th Cir. 1979), *citing Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed.2d 1297 (1956). " 'The word "claim" in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant . . . .' " *Purdy Mobile Homes v. Champion Home Bldrs., supra* at 1316, *quoting CMAX, Inc. v. Drewry,* 295 F.2d 695, 697 (9th Cir. 1961). None of plaintiffs' claims are finally adjudicated by the granting of judgment on the pleadings to defendants as to plaintiffs'

---

7. Plaintiffs also claim that the Regents could pay the judgment out of funds derived from the issuance of revenue bonds. *See* Plaintiffs' Closing Memorandum of Points and Authorities, at page 4, *citing* Cal. Education Code § 92435. However,

> the Regents['] power to issue bonds is limited to "establishing any project or acquiring

lands for any project . . ." [Cal. Education Code] § 92435. Clearly, any damage claim resulting from a lawsuit such as the instant one would not be paid through such revenue bonds but from public funds.

*Selman v. Harvard Medical School,* 494 F.Supp. 603, 615 (S.D.N.Y.1980).

sixth, seventh, eighth, ninth, tenth, eleventh and twelfth claims for retrospective damages against defendant Regents and the individual defendants sued in their official capacities; in each of plaintiffs' above-enumerated claims, plaintiffs have sued individual defendants in their individual capacities, and at this point in the litigation there has been no resolution of that portion of the claims. Therefore, since there is no "[a]djudication *fully* disposing of one or more . . . claims," *see* 6 *Moore's Federal Practice,* ¶ 54.41[3] [emphasis added], the court is not authorized to certify its order for immediate appeal pursuant to FRCivP 54(b).

■ Plaintiffs alternatively seek certification of the instant order for immediate appeal pursuant to 28 U.S.C. § 1292(b), which provides, in pertinent part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]

It has generally been held that § 1292(b) is to be "used sparingly, in exceptional cases," *see* Wright, Miller and Cooper, *Federal Practice and Procedure,* § 3929, and thus "certification is only proper under the most unusual circumstances where the immediate appeal might avoid protracted and costly litigation," *United States v. International Bus. Machines Corp.,* 406 F.Supp. 184, 185–86 (S.D.N.Y.1975), *citing, inter alia, Gottesman v. General Motors Corp.,* 268 F.2d 194 (2d Cir. 1959); *see also United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir. 1966).

[I]n order to certify the immediate appeal of an order, this [c]ourt must find:

(1) the order involves a controlling question of law;

(2) substantial ground for difference of opinion exists on this question of law; and

(3) an immediate appeal might materially advance the ultimate termination of the litigation.

*In re Pacific Homes,* 456 F.Supp. 851, 865 (C.D.Cal.1978), *rev'd on other grounds,* 611 F.2d 1253 (9th Cir. 1980). The sovereign immunity issue is certainly a "controlling question of law as to which there is substantial grounds for difference of opinion." *See* 28 U.S.C. § 1292(b). However, the court is unable to find that "an immediate appeal [of the issue] might materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). Plaintiffs assert that they believe that there is some possibility that the court's decision will be reversed, and that they are thus placed in an "untenable position concerning settlement." Plaintiffs further contend that if the court's decision should be reversed after trial, a new trial will have to be held at least on the damages issue, and perhaps on liability issues. The court is cognizant of these factors, but is not of the opinion that they are significant enough to except the case *sub judice* from the strong federal policy against piecemeal appeals. *See United States ex rel. Hollander v. Clay,* 420 F.Supp. 853, 859 (D.D.C.1976), *citing Switzerland Cheese Assn., Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); 28 U.S.C. §§ 1291, 1292(a). The court will, therefore, deny plaintiffs' "motion for certification pursuant to . . . 28 U.S.C. § 1292(b)."

For the reasons stated above, IT IS ORDERED that plaintiffs' "motion for reconsideration to alter or amend order or, in the alternative, for certification pursuant to [FRCivP] 54(b) or 28 U.S.C. § 1292(b)" is hereby denied.