**Bruce L. MOXLEY, Plaintiff,**

v.

**Edward VERNOT, etc., et al.,
Defendants.**

No. C–3–82–085.

United States District Court,
S.D. Ohio, W.D.

Nov. 29, 1982.

Herschel M. Sigall, Columbus, Ohio, for plaintiff.

Louis E. Gerber, Columbus, Ohio, for defendants.

DECISION AND ENTRY DISMISSING PLAINTIFF'S CLAIMS FOR RELIEF UNDER § 503 OF THE REHABILITATION ACT OF 1973 AND UNDER 42 U.S.C. § 1983 FOR ALLEGED VIOLATIONS OF THE REHABILITATION ACT OF 1973; DECISION AND ENTRY DISMISSING PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT UNIVERSITY OF CALIFORNIA, IRVINE, FOR DISCRIMINATION ON THE BASIS OF RACE; DEFENDANTS' MOTION FOR SUMMARY JUDGMENT GRANTED WITH RESPECT TO PLAINTIFF'S CLAIM UNDER § 504 OF THE REHABILITATION ACT OF 1973; PLAINTIFF'S CLAIM UNDER § 1983 FOR RACIAL DISCRIMINATION AGAINST DEFENDANT VERNOT REMAINS FOR TRIAL

RICE, District Judge.

I. INTRODUCTION

The captioned cause is an action for discrimination brought both under the Rehabilitation Act of 1973, 29 U.S.C. § 793 and § 794, and under 42 U.S.C. § 1983. Defendant University of California, Irvine, is a party to a contract with the United States Government, under which it conducts research in the area of toxic hazards research, at its Toxic Hazards Research Unit at Wright Patterson Air Force Base, in Dayton, Ohio. Plaintiff is employed as a Laboratory Assistant II at the Toxic Hazards Research Unit. He alleges that Defendants University of California, Irvine, and Edward Vernot, acting in his official capacity as Administrator of Laboratories for Defendant University of California, Irvine, discriminated against him because he is handicapped, and because of his race, by

refusing to promote him to the position of Laboratory Assistant III.

Plaintiff alleges that he is entitled to relief under the following legal theories:

1. The University of California, Irvine, failed to implement an affirmative action plan designed to employ, and advance in employment, qualified handicapped individuals as required by § 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793.

2. The University of California, Irvine, violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by discriminating against him solely because he is handicapped.

3. Plaintiff is entitled to relief under 42 U.S.C. § 1983, because Defendants violated §§ 503 and 504 of the Rehabilitation Act of 1973, thereby depriving him of rights secured by the constitution or laws of the United States.

4. Defendants have discriminated against Plaintiff on the basis of race, by refusing to promote him to the position of Laboratory Assistant III, thereby depriving him of the "rights, privileges and immunities secured ... by the Fourteenth Amendment to the Constitution," in violation of § 1983. (Doc. # 1, ¶ 1).

This case is presently before the Court on Defendants' motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), or in the alternative, motion for summary judgment, pursuant to Fed.R.Civ.P. 56. Defendants contend that: (1) there is no private right of action under § 503 or § 504 of the Rehabilitation Act of 1973, (2) because no rights are created for Plaintiff by the applicable sections of the Rehabilitation Act of 1973, Plaintiff does not have a valid claim under § 1983 for discrimination on the basis of his handicap, and (3) that De-

fendant University of California, Irvine, is not a "person" for purposes of liability under § 1983, because of the doctrine of sovereign immunity granted by the Eleventh Amendment. Defendants have not, however, moved the Court to dismiss the racial discrimination claim against Defendant Edward Vernot.

▮▮▮ Defendants' motion for judgment on the pleadings under Rule 12(c) is essentially a challenge to the legal basis of the complaint. The Court believes that such a challenge is more appropriately viewed as a motion to dismiss for failure to state a claim upon which relief may be granted, under Fed.R.Civ.P. 12(b)(6). *Amersbach v. City of Cleveland,* 598 F.2d 1033 (6th Cir. 1979). A motion to dismiss for failure to state a claim upon which relief can be granted may be granted only if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[1] *See, Westlake v. Lucas,* 537 F.2d 857 (6th Cir.1976).

Further, where a motion to dismiss is made under Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."[2] Fed.R.Civ.P. 12(b)(6). Summary judgment is to be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the Court has considered materials outside the pleadings, submitted by the parties, only with respect to the question of whether a private right of action exists under § 504 of the Rehabilitation Act of 1973. All other matters outside the pleadings were excluded by the Court.

---

1. The Court notes that the standard of review for Rule 12(c) motions is nearly identical to the standard set forth above for ruling on 12(b)(6) motions. *See, Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 532 F.Supp. 480 (S.D.Ohio 1982) (note 4). The Court believes, however, that because Defendants have attacked the legal basis of Plaintiff's claim, dis-

posal of said claims by dismissal, where possible, rather than by judgment, is more appropriate.

2. Rule 12(c) motions involving matters outside the pleadings are also to be disposed of as motions for summary judgment.

Based on the above discussion, and for the reasons set forth below, the Court concludes that, with respect to Plaintiff's claims for relief under § 503 of the Rehabilitation Act of 1973, under 42 U.S.C. § 1983 for violations of the Rehabilitation Act of 1973, and under 42 U.S.C. § 1983 for racial discrimination against Defendant University of California, Irvine, Plaintiff has set forth no facts entitling him to relief. Those claims are therefore dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. With respect to Plaintiff's claim for relief under § 504 of the Rehabilitation Act of 1973 (the sole claim upon which matters outside the pleadings have been discussed), the Court has concluded, after considering the pleadings and affidavits submitted by both parties, that there is no genuine issue as to any material fact and that Defendants are, therefore, entitled to summary judgment as a matter of law.

## II. DISCUSSION

### A. Plaintiff's claim under § 503 of the Rehabilitation Act of 1973

■ Plaintiff first seeks relief under § 503 of the Rehabilitation Act of 1973. Section 503(a) and (b) state, in pertinent part:

(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title.

. . . . .

(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Depart-

ment shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contracts and the laws and regulations applicable thereto.

29 U.S.C. § 793(a), (b).

Because § 503(b) of the Rehabilitation Act of 1973 provides for an administrative remedy for violation of § 503(a), the Sixth Circuit held in *Hoopes v. Equifax*, 611 F.2d 134 (6th Cir.1979) that a private cause of action does not exist for such a violation. Thus, the Court concludes that Plaintiff may not maintain, and this Court may not consider, a private cause of action brought under § 503 of the Rehabilitation Act of 1973.

### B. Plaintiff's claim under § 504 of the Rehabilitation Act of 1973

■ Plaintiff next seeks relief under § 504 of the Rehabilitation Act of 1973. Section 504 provides, in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

Section 505, which was added to the Rehabilitation Act in 1978, provides for remedies and attorney fees for violation of the Act. Section 505(a)(2) provides that:

[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 [504] of this title.

29 U.S.C. § 794a(a)(2).

Section 604 of Title VI authorizes action against an employer only "where a *primary*

*objective of the Federal financial assistance is to provide employment."* 42 U.S.C. §·2000d–3 (emphasis added).

· Defendants contend that, by virtue of the incorporation of § 2000d–3 into § 505 of the Rehabilitation Act of 1973, "a plaintiff will not have standing to maintain a suit under Section 504 of the Rehabilitation Act unless the employer received federal financial assistance and the primary purpose of the assistance is to provide employment." (Doc. # 9, p. 6). For the reasons stated below, the Court agrees.

Although the Sixth Circuit has not yet ruled on this issue, "[t]he great weight of authority holds that claims of employment discrimination under § 504 cannot be maintained unless a primary objective of the federally funded activity or program is to provide employment." *Meyerson v. State of Arizona,* 507 F.Supp. 859, 863 (D.Ariz. 1981) (*citing, Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672 (8th Cir. 1980), *cert. denied,* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir.1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226 (7th Cir.1980); *Contra, Hart v. County of Alameda,* 485 F.Supp. 66 (N.D.Cal.1979). In *Carmi, supra,* the Eighth Circuit stated that "the legislative history of Title VI lends strong support to our conclusion that Congress did not intend to extend protection under Title VI to any person other than an intended beneficiary of federal financial assistance. Thus, in suits charging employment discrimination under Title VI, one of the purposes of the federal financial assistance must be to provide employment." [3] *Id.*

at 674–75 (footnote omitted). The Fourth Circuit held, in *Trageser, supra,* at 89, that "[t]itle VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless (1) providing employment is a primary objective of the federal· aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." (footnotes omitted).

This position was adopted this year by the Eastern Division of this District in *Morlock v. State of Ohio,* No. C–2–80–643 (S.D. Ohio, July 1, 1982) (Judge Robert M. Duncan), wherein the Court held that "plaintiff is entitled to pursue a private right of action under § 504 of the Rehabilitation Act only if the primary objective of the Federal financial assistance received by the defendants is to provide employment." *Id.* at 3. This Court is not persuaded by recent lower court decisions to the contrary. *See, e.g., Philipp v. Carey,* 517 F.Supp. 513 (N.D.N.Y. 1981) (district court bound by Second Circuit decision in *Leary v. Crapsey,* 566 F.2d 863 (2d Cir.1977) decided prior to 1978 amendment adding limitation of Title VI); [4] *Hutchings v. Erie City and County, etc.,* 516 F.Supp. 1265 (W.D.Pa.1981) (relying on pre-1978 authority); *Hart v. County of Alameda,* 485 F.Supp. 66 (N.D.Cal.1979) (relying on pre-1978 authority).

The Court concludes that Plaintiff may maintain a private cause of action against Defendants University of California, Irvine, and Edward Vernot, if the primary objective of the federal funding for the Toxic Hazards Research Unit is to provide employment. A review of the affidavit submitted by Defendants from Dr. James MacEwen, Academic Administrator of the

---

**3.** The Court in *Carmi* emphasized the following language from the Congressional Record in support of its conclusion: *"As to each assisted program or activity, title VI will require an identification of those persons whom Congress regarded as participants and beneficiaries,* and in respect to whom the principle declared in title VI would apply." 620 F.2d at 675 (*citing,* 110 Cong.Rec. at 1521).

**4.** Prior to 1978, the Rehabilitation Act of 1973 did not provide for a remedy for violation of

§ 504. In 1978, Congress promulgated § 505, which specifically made available the remedies provided for in Title VI of the Civil Rights Act of 1964, for a violation of § 504. Thus, Courts considering the issue of whether a private right of action existed under § 504 prior to 1978 had no reason to consider the applicability of Title VI remedies to such a question. The promulgation of § 505 in 1978 made consideration of the remedies available under Title VI *mandatory.*

Toxic Hazards Research Unit, indicates that "[t]here is no objective within the contract [between University of California, Irvine and the federal government] to provide employment." (Doc. # 9, ¶ 4 of affidavit). Rather, the purpose of the funding is to "determine effects of inhalation exposures to gases and aerosols by use of experimental animals." *Id.*

Plaintiff makes no allegation in his complaint that the Toxic Hazards Research Unit was funded for the purpose of providing employment. Moreover, neither Plaintiff's memorandum in opposition to Defendants' motion nor his affidavit in support dispute the above finding. Therefore, the Court concludes that because Plaintiff has not shown that the funding of the Toxic Hazards Research Unit has as its primary objective the provision of employment, a private cause of action for an alleged violation of § 504 of the Rehabilitation Act of 1974 cannot be maintained by Plaintiff. The Court concludes that there is "no genuine issue as to any material fact" concerning whether the Toxic Hazards Research Unit was funded for the purpose of providing employment. Therefore, the Court finds that Defendants are entitled to judgment as a matter of law, pursuant to Fed.R. Civ.P. 56(c).

C. *Plaintiff's Claim under 42 U.S.C. § 1983 for Violation of the Rehabilitation Act of 1973*

Plaintiff also asserts a claim for relief under 42 U.S.C. § 1983, alleging that Defendants' actions in violation of the Rehabilitation Act of 1973 deprived him of rights secured by the constitution or laws of the United States. Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court held in *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980) that "the § 1983 remedy broadly encompasses violations of federal statutory law." In *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Court discussed the scope of *Maine v. Thiboutot.* There, the Court said it

has recognized two exceptions to the application of § 1983 to statutory violations. In *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1 [101 S.Ct. 1531, 67 L.Ed.2d 694] (1981), we remanded certain claims for a determination (i) whether Congress had foreclosed private enforcement of that statute in the enactment itself, and (ii) whether the statute at issue there was the kind that created enforceable "rights" under § 1983.

In *Middlesex,* the Court found that Congress had foreclosed private enforcement of the Federal Water Pollution Control Act and the Marine Protection Research and Sanctuaries Act of 1972, and therefore found it unnecessary to reach the second issue.

Thus, the question presented with respect to this issue is whether private enforcement of the Rehabilitation Act of 1973 was foreclosed by Congress or whether, in the alternative, the Rehabilitation Act of 1973 creates enforceable "rights" under § 1983.

The Court has previously concluded in this Opinion that a cause of action for an alleged violation of § 503 of the Rehabilitation Act of 1973 cannot be maintained by a private litigant. The Court has also concluded previously that where a private party cannot show that the program or activity which he alleges is discriminatory is funded by the federal government for the purpose of providing employment, he may not maintain a private cause of action for an alleged violation of § 504 of the Rehabilitation Act of 1973. Thus, the Court concludes that under the first *Pennhurst* exception (wheth-

er Congress has foreclosed private enforcement of the statute) to the *Maine v. Thiboutot* doctrine, Plaintiff may not maintain a cause of action under 42 U.S.C. § 1983 for alleged violations of the Rehabilitation Act of 1973. The Court therefore finds it unnecessary to reach the second issue (whether the Rehabilitation Act creates enforceable rights under § 1983).

### D. *Plaintiff's Claim under 42 U.S.C. § 1983 for Racial Discrimination*

Plaintiff also seeks relief under 42 U.S.C. § 1983, alleging that Defendants University of California, Irvine, and Edward Vernot discriminated against him because of his race, by refusing to promote him to the position of Laboratory Assistant III. Defendants contend, however, that the University of California, Irvine, is not a "person" within the meaning of § 1983 because it is entitled to assert the doctrine of sovereign immunity granted to the State of California by the Eleventh Amendment. Defendants do not, however, seek dismissal of Plaintiff's claim for racial discrimination against Defendant Vernot.

In a suit brought under § 1983 against the State of Alabama, the Supreme Court held that "suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978). Subsequently, the Court said, in *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) that "we simply are unwilling to believe ... that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States." Thus, "[t]he fact that Congress did not intend to abrogate eleventh amendment immunity for the states means, necessarily, that a state is not a 'person' under § 1983 and no suit for any relief may be maintained against the state under § 1983." *Bailey v. Ohio State University,* 487 F.Supp. 601, 603 (S.D.Ohio 1980).

In the context of this case, whether the University of California, Irvine, may be made a defendant in an action brought under § 1983 depends on the proper characterization of the University. *See, Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[5] If the University is characterized as an independent political subdivision, Eleventh Amendment immunity would not extend to it. *Id.* However, if the University is more properly characterized as an "arm of the state," the State of California's sovereign immunity would extend to it, *id.* at 280, 97 S.Ct. at 572–573, and the Court would be required to dismiss Plaintiff's § 1983 claim against the University. Resolution of this question "depends, at least in part, upon the nature of the entity created by state law." *Id.*

In *Vaughn v. Regents of University of California,* 504 F.Supp. 1349 (E.D.Cal. 1981), a California district court thoroughly examined the question of whether the University of California is the "alter ego" of the state for purposes of sovereign immunity under the Eleventh Amendment. That Court found three factors which compelled the conclusion that the University of California *is* the alter ego of the state. First, the Court found that members of the University Board of Regents are appointed by the Governor of California and approved by the Senate. Thus, the State retains some control over the governing body of the University. *Id.* at 1353. Second, the Court found that the University performs an essential governmental function in educating citizens. *Id.* Third, the Court concluded that any judgment against the University would have to be paid out of the state treasury. *Id.* The Court concluded that the "three factors discussed ... tip the scale in favor of a finding that the State of California is the real party in interest," entitling the University to invoke Eleventh Amendment immunity. *Id.* at 1354.

5. *See also, Gross v. University of Tennessee,* 448 F.Supp. 245 (W.D.Tenn.1978), *aff'd,* 620 F.2d 109 (6th Cir.1980); *Martin v. University of Louisville,* 541 F.2d 1171 (6th Cir.1976).

This Court concludes that, since the University of California, Irvine, is an "arm of the state" of California, Defendants are correct in their contention that the University is entitled to invoke Eleventh Amendment immunity in a suit for racial discrimination under § 1983. Plaintiff's claim against Defendant University is therefore dismissed for failure to state a claim for which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## III. CONCLUSION

In summary, the Court concludes that the Plaintiff has set forth no set of facts entitling him to relief under § 503 of the Rehabilitation Act of 1973 or 42 U.S.C. § 1983 for alleged violations of the Rehabilitation Act. Those claims are therefore dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed.R. Civ.P. 12(b)(6). The Court has also concluded that there is no genuine issue of material fact with respect to Plaintiff's claim for relief under § 504 of the Rehabilitation Act, and that Defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment with respect to the claim made under § 504 is therefore granted, pursuant to Rule 56(c). Finally, Plaintiff has set forth no set of facts *against Defendant University of California, Irvine,* which would entitle him to relief under § 1983 for discrimination on the basis of race. Therefore, Plaintiff's § 1983 racial discrimination claim *against the University* is dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted.

Further, because all of the claims against Defendant University of California, Irvine, have been disposed of, the University is dismissed as a party to this action. Plaintiff's claim under § 1983 for discrimination on the basis of race against Defendant Vernot has not been dismissed. The trial date for that issue alone has been set for 9:00 a.m. on Monday, November 29, 1982.