Henry Keith STERZING, Plaintiff,

v.

FORT BEND INDEPENDENT SCHOOL DISTRICT et al., Defendants.

C. A. No. 69–H–319.

United States District Court,
S. D. Texas,
Houston Division.

May 5, 1972.

Leonard J. Schwartz, Columbus, Ohio, Clyde Stanley Boose, Houston, Tex., for plaintiff.

John L. Jeffers, Jr., Baker & Botts, Houston, Tex., for defendants.

Logene L. Foster, Sugar Land, Tex., for defendant Roy Kelly.

CARL O. BUE, Jr., District Judge.

## FINDINGS AND CONCLUSIONS

THE COURT:

From September 1966 until February 26, 1968, Henry Keith Sterzing, plaintiff herein, was employed as a civics instructor at the John Foster Dulles High School, in Stafford, Texas, which is a part of the Ft. Bend Independent School District, a defendant herein.

At the end of the 1966–67 school year Mr. Sterzing was re-employed by the Board of Trustees for an additional year.

In September 1967, shortly after the start of the 1967–68 school year, Mr. H. L. Jenkins, principal of the John Foster Dulles High School, advised Mr. Sterzing that there had been some complaints by parents about the manner in which Mr. Sterzing was teaching his civics classes; specifically, complaints concerning plaintiff's truthful response to a student's classroom question that he was not opposed to interracial marriages.

Principal Jenkins at about the same time instructed Jane Schneider, chairwoman of Mr. Sterzing's social studies department, to instruct plaintiff to teach his current events course within the text and not discuss controversial issues. Thereafter Mr. Sterzing was advised by Mrs. Jane Schneider, his department head, that the school board, or school administration, wanted him to confine his teaching to the text. The problem was

discussed by Mrs. Schneider and Mr. Sterzing and they both agreed that it was extremely difficult to avoid controversial issues, especially in the teaching of senior political science and civics. The agreed course of action between the department head and Mr. Sterzing was to use the textual material as a basis for the course and to build and supplement with other pertinent material, and further to use care in presenting controversial issues.

Shortly after this conversation with Mrs. Schneider, and still in September 1967, Mr. Sterzing was advised by Mr. James N. Ratcliff, director of secondary education for the Fort Bend Independent School District, that a group of parents planned to attend the school board meeting scheduled for September 27, 1967 in order to protest the manner in which Mr. Sterzing was teaching his classes.

In recognition of what was about to be put in issue, Mr. Sterzing wrote on the blackboard for each of his classes on September 27, 1968, the following:

"Academic freedom in the classroom. Watch local government in action tonight at 7:30, in the School Administration Building. Question of public policy, shall a teacher in local school be discharged or retained at his teaching position."

A group of parents did not materialize at the September 27, 1967 board meeting, but at that board meeting Mr. Sterzing and Mr. Jenkins suggested that the board go into executive session to discuss Mr. Sterzing's teaching.

Mr. Sterzing was not on the board's agenda and it had not planned to discuss any matter concerning him at that meeting. In executive session Mr. Jenkins advised the board of several complaints he had received from parents of children in Mr. Sterzing's classes, concerning comments made by Mr. Sterzing during class. These comments were diverse, but in each instance reflected Mr. Sterzing's opinion on a sensitive social or political issue.

After hearing these complaints and Mr. Sterzing's account with respect to each, the board suggested to Mr. Sterzing that he might be wise to confine his teaching to the text and to avoid controversial issues, to the extent possible.

Mr. Sterzing replied that he could not teach in this manner.

It was further suggested that Mr. Sterzing should take a more positive approach to teaching, although that term was never defined by the board. Mr. Sterzing explained that it was impossible to teach a high school senior class current events and avoid discussion of controversial issues. There was no actual resolution of the issues presented and no definitive instructions issued.

Between September 1967 and February 1968 the plaintiff distributed an article to his classes written by Eric Schnapper denouncing the repression of anti-war dissent in the armed forces. Also, between September 1967 and February 1968 Mr. Sterzing distributed to his classes the fund solicitation letter from students at the University of Texas who had been arrested at Fort Hood in Killeen, Texas in connection with their anti-war protest during a speech by President Johnson. The presentation of the letter was accompanied by Mr. Sterzing's statement that this was not an appeal for funds from his students, but was for use as an original source document to aid their understanding of the manner in which interest groups arouse public support.

Early in February 1968 Mr. Sterzing taught in each of his classes a six day unit on race relations. In connection with this unit he distributed to his classes three articles and showed three films on the subject of race relations. The films were properly cleared by Mr. Sterzing through school channels and were, in fact, ordered through and paid for by the school authorities. The course curriculum and some of the actual reading materials were made available to Mr. Sterzing's new department head, Mrs. Ann Taylor.

At the conclusion of the six day unit on race relations Mr. Sterzing gave each of his classes a true-false and multiple choice test over the textual material, class lectures and audio-visual materials. Before administering the test Mr. Sterzing showed such test to Mr. Elkins, assistant superintendent.

Parents of several of Mr. Sterzing's students, including Mr. Roy Kelly and Mrs. Manford, objected to several statements made in class by Mr. Sterzing regarding race and prejudice and with regard to the examinations. They communicated their objections to school officials and school board.

With the understanding of school officials, who indicated that he should not discuss the material in question, Mr. Sterzing made personal visits to two of these parents and explained his position to clarify the misunderstanding. The results did nothing to alleviate the problems.

On February 15, 1968, at such visit, Mr. Kelly told Mr. Sterzing he would do his best to get him fired as soon as possible, because plaintiff was teaching Mr. Kelly's daughter items inconsistent with what Mr. Kelly thought she should believe.

After these tests were given by Mr. Sterzing to his classes, and on February 28, 1968, Mr. Kelly, à defendant herein, appeared at the school board meeting. He reviewed the written materials described above and also reviewed the tests given by Mr. Sterzing over the unit on race relations.

Mr. Kelly took the position that the materials were of a propagandistic nature and were given to a captive audience without the opportunity to express opposing viewpoints being given to the students.

On February 27, 1968, without affording Mr. Sterzing notice or opportunity to be heard in his own defense, the board voted to discharge Mr. Sterzing, effective immediately. The dismissal was asserted to be based upon insubordination.

On February 28th, 1968, Mr. Sterzing was informed of the board's action and forbidden to enter the school grounds thereafter, except at a set and supervised occasion to remove his personal belongings.

Subsequently, the board affirmed the termination of Mr. Sterzing's employment and voted to pay him through the remainder of his contract term, ending June 1, 1968. Such payment was thereafter received by Mr. Sterzing.

Plaintiff appealed to the Texas Commissioner of Education. After a hearing the Commissioner rendered official findings and conclusions, including:

A. Plaintiff's dismissal was purportedly based upon insubordination;

B. The dismissal was without justifiable cause;

C. The Commissioner of Education had no jurisdiction to order reinstatement of plaintiff.

The Texas Board of Education thereafter affirmed the Commissioner's determination.

Mr. Sterzing attempted to secure a teaching position at numerous schools in Texas, but, at least in large part, as a result of defendant's dismissal of him he was unable to secure a teaching job thereafter. He eventually obtained a civilian job with the Air Force, which required overseas service. He is presently serving on Taiwan, with his present contract expiring in 1974. His salary in the Air Force since 1968 up to the present time has been in the range of $15,000. Thus, at all such times Mr. Sterzing has been earning in excess of what he would have earned as a teacher, had he remained in the Fort Bend School System. However, Mr. Sterzing at all times desired, and still desires, to remain in the teaching profession.

Viewing all of the evidence in this case it becomes apparent to this Court that much of what has precipitated this lawsuit need never have occurred, had all parties been fully informed of the true circumstances under which events took place.

Between September 1967 and February 1968 there was a serious lack of communication through channels from the individual teachers such as Mr. Sterzing, to the principal, Mr. Jenkins, the assistant superintendent, Mr. Elkins, and the curriculum chairman, Mr. Ratcliff.

For example, it seems strange, indeed, to this Court that the principal had never visited the classroom of Mr. Sterzing and was wholly unfamiliar with his teaching methods. Yet it is this pattern of unfamiliarity which seems to permeate the so called chain of command, culminating with the board, which then proceeded to act and reach decisions without the benefit of firsthand knowledge as to what was going on in Mr. Sterzing's classroom.

This Court is obligated to reach a decision based on the record in this case. It cannot engage in surmise and conjecture. The Court has read the articles and reviewed the disputed tests. Inasmuch as there is only minimal proof apart from that of Mr. Sterzing's testimony concerning the nature of his class discussions it can only be concluded that, viewed overall, something approaching fair treatment of the various viewpoints on controversial issues was approached when all aspects of the course are considered. If it wasn't, Mr. Sterzing was wrong. And this Court stresses to him now that he should bear it in mind in his teaching in the future.

A teacher's methods are not without limits. Teachers occupy a unique position of trust in our society, and they must handle such trust and the instruction of young people with great care. On the other hand, a teacher must not be manacled with rigid regulations, which preclude full adaptation of the course to the times in which we live. It would be ill-advised to presume that a teacher would be limited, in essence, to a single textbook in teaching a course to-

day in civics and social studies. What is so anomalous about this case is that there is considerable agreement that, if Mr. Sterzing's methods were as he said they were, there would be little, if any, objection to his techniques. Yet no one criticizing Mr. Sterzing took the trouble to find out firsthand what these techniques were, either prior to September 1967, or thereafter, when the complaints began to surface.

From the proof in this case the testimony of the two immediate department supervisors must be viewed as generally approving the teaching procedures and conduct of the plaintiff.

The Court therefore feels compelled at this juncture to issue several caveats:

1. The freedom of speech of a teacher and a citizen of the United States must not be so lightly regarded that he stands in jeopardy of dismissal for raising controversial issues in an eager but disciplined classroom.[1]

2. However, it must also be that teacher's duty to be exceptionally fair and objective in presenting his personally held opinions, to actively and persuasively present different views, in addition to open discussion.[2] It is the duty of the teacher to be cognizant of and sensitive to the feelings of his students, their parents, and their community.

Further, it is the binding duty of an administrative body to act with full information, with reason and deliberation, and with full benefit of the views of supervisors, principals and others familiar with the curriculum and teaching techniques in the schools, before denying a teacher his livelihood and professional status. It is entirely unfitting that such a board should be swayed by the hearsay remarks of persons not in possession of the facts, without specifically warning the accused of the con-

1. Keefe v. Geanakos, 418 F.2d 359 (1st Cir. 1969) ; Mailloux v. Kiley, 323 F.Supp. 1387 (D.Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971) ; Parducci v. Rutland, 316 F.Supp. 352 (M.D.Ala.1970).

2. Cases cited n. 1, supra.

templated action and allowing him a fair and impartial hearing before they act.

■ Accordingly, from the record in this case, the Court finds that Mr. Sterzing's classroom methods were formulated and conducted within the ambit of accepted professional standards. At least there is clearly insufficient probative evidence to the contrary in this case.

While the best method might have been to take care to present written materials to support each viewpoint in controversy, the various class discussions which this Court finds did occur adequately fulfill the need for expression of dissident views. While the best method of testing over a unit on race and prejudice might have been a test in essay form, the objective true and false and multiple choice tests given, in light of the written material, were adequate. A responsible teacher must have freedom to use the tools of his profession as he sees fit. If the teacher cannot be trusted to use them fairly, then the teacher should never have been engaged in the first place. The Court finds Mr. Sterzing's objectives in his teaching to be proper to stimulate critical thinking, to create an awareness of our present political and social community and to enliven the educational process. These are desirable goals.

■ The Court further finds that, while Mr. Sterzing was undoubtedly zealous in his duties, perhaps at times overly so, perhaps due to inexperience as a teacher, at no time were Mr. Sterzing's actions such that they could be characterized as insubordinate to the defendants with respect to any duty owed to any of them, nor was there any basis in fact or law justifying dismissal of the plaintiff. Even assuming that the board action was taken specifically because of the statements of Mr. Sterzing in class rather than for insubordination, as stated in the resolution of the board, the Court finds that such statements neither, one, materially and substantially interfered with appropriate discipline, nor, two, subjected students unfairly to indoctrination and influence.

■ The Court finds these rights to be evident, the substantive rights of a teacher to choose a teaching method, which, in the Court's view, on the basis of expert opinion, served a demonstrated educational purpose, and the procedural right of a teacher not to be discharged for the use of a teaching method which was not proscribed by a regulation or definitive administrative action, and as to which it was not proven that he had notice that its use was prohibited.[3]

This discharge of Mr. Sterzing and failure to rehire him, for the reasons stated by the school board, constituted a denial of due process and a violation of rights granted and protected by the First and Fourteenth Amendments of the Constitution.

As to Mr. Kelly, the Court does believe that Mr. Kelly acted improvidently, and without due deliberation, but finds such actions to have been made in good faith as a parent's concern for the well-being of his child. This is a normal, genuine and healthy concern of a parent and one that a teacher must recognize and diplomatically deal with.

■ The Court further finds that the defendant Roy Kelly did not unlawfully conspire with other persons to cause plaintiff to lose his job and be prevented from securing future employment, or to deprive the plaintiff of his rights under the Constitution and the Civil Rights Act.

■ The action taken by the school board as to Mr. Sterzing, and sanctioned by the school administration, constituted a denial of procedural and substantive due process to the plaintiff. Although the Court finds a denial of procedural due process, the Court further finds that this case is unsuitable for remand, and that plaintiff was accorded a full and fair procedural hearing on all issues on appeal to the State Commissioner of Ed-

3. Mailloux v. Kiley, 323 F.Supp. 1387 (D.Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971).

ucation and the State Board of Education.

■ This Court accords great weight to the decisions of those bodies, both in comity and in agreement with the decisions there rendered. However, this Court does not feel bound by their findings or conclusions. Rather, it views this action, under 42 U.S.Code § 1983, as entirely a de novo hearing. Accordingly, the resolution of substantive issues is properly made by this Court.

The Court finds, as stated above, that the plaintiff has been denied the proper exercise of his right of free speech, and that this denial was a consequence of the arbitrary actions of the named defendants herein, except defendant Kelly, and that plaintiff has been damaged thereby. Because of such actions of defendant, the plaintiff has suffered monetary damages of lost compensation, loss of opportunity to remain in and advance in his career as a teacher, mental suffering, loss of professional status and reputation, and the incurring of legal fees and expenses.

■ The Court has considered the right of the plaintiff to reinstatement. Since the plaintiff was hired on a yearly contract, which contract was fully paid by the school administration, and since reinstatement at this late date would only serve to revive antagonisms, the Court believes the proper exercise of discretion to be denial of the requested reinstatement. This the Court does in realization of the fact that plaintiff had an expectancy of re-employment, taking into consideration the value of reinstatement in monetary damages. Such a holding was rendered in Smith versus Losee,[4] an opinion by Judge Ritter, where reinstatement was not awarded, even

though a finding of denial of substantive due process was entered.

Accordingly, plaintiff is entitled to judgment:

1. Directing the defendants to expunge from their employment records and transcripts all references to plaintiff's discharge.[5]

2. A judgment against all defendants, except Roy Kelly, jointly and severally in the amount of $20,000 as general damages, together with costs.[6]

3. A judgment against all defendants, except Roy Kelly, jointly and severally, in the amount of $5,000 as attorney's fees.[7]

Counsel will submit within 20 days a proposed judgment agreed upon as to form, in accordance with these findings of fact and conclusions of law.

## FINAL JUDGMENT AND DECREE

This Action came on for trial before the Court, Honorable Carl O. Bue, Jr., United States District Judge, presiding, in the regular order of the Docket on the fourth day of April, 1972, whereupon all parties appeared and announced ready for trial. No Jury having been demanded, all matters of fact and law were submitted to the Court. The case having been fully submitted and due consideration given to the pleadings, proof and arguments, and the Court made and entered, Findings of Facts and Conclusions of Law herein;

It is hereby ordered, adjudged and decreed by the Court as follows:

### I.

That the plaintiff, Henry Keith Sterzing, (hereinafter called plaintiff), shall have his relief as sought by the complaint against the Fort Bend Independent

4. Smith v. Losee, et al., C.A. No. C283-69 (D.Utah 1972).

5. Mailloux v. Kiley, 323 F.Supp. 1387 (D. Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971).

6. Ramsey v. Hopkins, 447 F.2d 128 (5th Cir. (1971); Harkless v. Sweeney Ind. School Dist., 427 F.2d 319 (5th Cir. 1970), cert. de-

nied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 459 (1971).

7. Karstetter v. Evans, 350 F.Supp. 209 (N. D.Tex.1972, opinion by Judge Hughes); Bates v. Hinds, 334 F.Supp. 528 (N.D.Tex. 1971); Moore v. Knowles, 333 F.Supp. 53 (N.D.Tex.1971).

School District, Fort Bend County, Texas, a public body corporate; and Kenneth A. Landin, President of the Board of Trustees of Fort Bend Independent School District, Fort Bend County, Texas; Tony Langelosi, Herbert R. Shelton, Jr., Bruce Edwards, William A. Little, Antonio Arriga and Don A. Whatley, members of the Board of Trustees of Fort Bend Independent School District, Fort Bend County, Texas, (hereinafter called defendants) jointly and severally in the following particulars:

a. The defendant, its officers, agents, employees and privies, are ordered to expunge from their employment records, business records, and transcripts, all reference to plaintiff's discharge in any manner whatsoever;

b. The plaintiff is hereby awarded and shall have and recover of and from the defendants as compensation for lost monetary compensation, loss of opportunity to remain in and advance in his professional career as a classroom teacher, mental suffering, loss of professional status and reputation, and general damages to the sum of Twenty Thousand and No/100 ($20,000.00) Dollars, together with interest from time of judgment at the rate of six per cent (6%) per annum until same is paid;

c. The plaintiff is further hereby awarded and shall have and recover of and from the defendant as compensation for Attorney's fees incurred by the plaintiff herein the sum of Five Thousand and No/100 ($5,000.00) Dollars together with interest from time of judgment at the rate of six per cent (6%) per annum until the claim is paid.

d. The plaintiff is hereby awarded judgment against defendants for all costs and disbursements incurred in this action for which the Clerk shall forthwith tax and for which execution shall issue.

## II.

That the defendant, Roy Kelly, is in all respects, discharged and the relief sought by the plaintiff against the defendant, Roy Kelly, is in all respects denied.

## III.

That the plaintiff's request for reinstatement as a teacher in the Fort Bend Independent School District, Fort Bend County, Texas, is denied.