Mary DURHAM, Plaintiff,

v.

Gregg W. PARKS and the University of
Minnesota, Defendants.

Civ. No. 4–82–862.

United States District Court,
D. Minnesota,
Fourth Division.

May 12, 1983.

Edward Q. Cassidy, St. Paul, Minn., for
plaintiff.

Stephen S. Dunham, University of Minnesota, Minneapolis, Minn., for defendants.

## ORDER

MILES W. LORD, Chief Judge.

The above-entitled matter is before this court upon defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure. This matter was taken under advisement after oral argument. Defendants' motion states five grounds for dismissal: 1) The amended complaint contains no jurisdictional statement as required under Rule 8(a), Fed.R. Civ.P. 2) The first cause of action in the amended complaint against the University of Minnesota and Gregg Parks, sued in his official capacity, in which the plaintiff relies upon 42 U.S.C. §§ 1981 and 1983, and 28 U.S.C. § 1343, should be dismissed because both defendants are immune from

such suit under the eleventh amendment to the constitution. 3) Plaintiff's allegations of injury are too speculative and vague to afford relief and she therefore lacks standing to bring suit. 4) The second cause of action should be dismissed because it does not state a claim for violation of the Minnesota Data Practices Act. 5) If the first cause of action is dismissed, then this court has no jurisdiction over the second cause of action, a state claim, pursuant to the doctrine of pendent jurisdiction.

This court will address each ground for dismissal separately. For the reasons stated herein, defendants' motion as to parts one, two and three is denied, part four is granted and part five is not applicable.

## I.

This court rejects defendant's claim that this action should be dismissed for plaintiff's failure to make a jurisdictional statement in the amended complaint. The absence of such a statement in this case was an error on the part of plaintiff's counsel. The Supreme Court has emphasized that even a flawed complaint must be "so construed as to do substantial justice."

> Following the simple guide of Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioner's complaint adequately set forth a claim.... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957).

■ In her original and amended complaints, the plaintiff has alleged sufficient facts to find a reasonable basis for a claim arising under 42 U.S.C. §§ 1981 and 1983. Moreover, because those claims were contained in the complaint, defendants had ample notice of the existence and nature of those claims. It does not appear from the face of plaintiff's pleadings and from her briefs that she was attempting to evade the jurisdictional complexities arising from the eleventh amendment issues in this case. For these reasons, the first count of defendants' motion to dismiss is denied.

## II.

■ Defendants' second claim for dismissal is that the University of Minnesota and Gregg Parks, sued in his official capacity, should enjoy immunity under the eleventh amendment from plaintiff's §§ 1981 and 1983 cause of action. The eleventh amendment provides:

> the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.

Additionally,

> While the Amendment by its terms does not bar suits against a state by its own citizens the [Supreme] Court has consistently held that an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.

*Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The fact that the state is not named as a party is of no consequence, for if a state agency or state official is the named defendant and the action is therefore in essence one for the recovery of money from the state, the "state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), quoted in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

The question before this court is whether such a relationship exists between the University of Minnesota and the State of Minnesota so that it could be fairly said that an action against the University is one against the state so that the University and Gregg Parks enjoy the protection of sovereign immunity.

In Eleventh Amendment cases the question of whether the state is "the real party in interest" is one of federal law, but federal courts must examine the powers, characteristics and relationships created by state law in order to determine whether the suit is in reality against the state itself.

*Hander v. San Jacinto Junior College,* 519 F.2d 273, 279 (5th Cir.1975).

The appropriate factors to consider when determining if a state university is actually an arm of the state are those factors set out in *Jackson Sawmill Co. v. United States:*

> In determining whether a separate state agency or institution shares the Eleventh Amendment shield as an "alter ego" of the state, a court must look to numerous factors, no one of which is conclusive.... The most important, of course, is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury.... Also to be considered is whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operations....

*Jackson Sawmill Co. v. United States,* 580 F.2d 302, 308 (8th Cir.1978), *cert. denied* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), quoting *Fitzpatrick v. Bitzer,* 519 F.2d 559, 564 (2d Cir.1975), *rev'd on other grounds* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (citations omitted).

The majority of federal courts which have considered the "alter ego" relationship of a state university to its state have concluded that a suit against the university is a suit against the state for the purposes of the eleventh amendment. *See, e.g., Perez v. Rodriguez,* 575 F.2d 21 (1st Cir.1978); *Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir. 1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Prebble v.*

*Brodrick,* 535 F.2d 605 (10th Cir.1975); *Long v. Richardson,* 525 F.2d 74 (6th Cir. 1975); *Thonen v. Jenkins,* 517 F.2d 3 (4th Cir.1975); *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.1971); *Williams v. Eaton,* 443 F.2d 422 (10th Cir.1971); *Walstad v. University of Minnesota Hosps.,* 442 F.2d 634 (8th Cir.1971); *Vaughn v. Regents of University of California,* 504 F.Supp. 1349 (E.D.Cal.1981); *Weisbord v. Michigan State University,* 495 F.Supp. 1347 (W.D. Mich.1980); *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.1980); *Zentgraf v. Texas A & M University,* 492 F.Supp. 265 (S.D.Tex.1980); *but see, e.g., Samuel v. University of Pittsburgh,* 538 F.2d 991 (3d Cir.1976); *Dyson v. Lavery,* 417 F.Supp. 103 (E.D.Va.1976); *Gordenstein v. University of Delaware,* 381 F.Supp. 718 (D.Del.1974). However, the "weight" of the above-cited authority is not dispositive of the issue as "the status of each university must be considered on the basis of its own peculiar circumstances." *Jacobs v. College of William and Mary,* 495 F.Supp. 183, 189 (E.D.Va.1980), citing *Soni v. Board of Trustees,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976).

This court must thus undergo an analysis of the relevant factors as they pertain to the Board of Regents of the University of Minnesota.

The University of Minnesota was incorporated under "An Act to incorporate the University of Minnesota, at the Falls of St. Anthony." Territorial Laws 1851, c. 3. Those rights originally conferred upon the University were then perpetuated unto the University through article 13, section 3, of the Minnesota Constitution.[1]

> So the University, in respect to its corporate status and government, was put beyond the power of the [L]egislature by paramount law, the right to amend or repeal which exists only in the people themselves.

*University of Minnesota v. Chase,* 175 Minn. 259, 265, 220 N.W. 951 (1928).

---

1. This is unlike Ohio State University which the court determined could be modified by the legislature. *Baily v. Ohio State,* 487 F.Supp. 601, 604 (S.D.Ohio 1980).

The laws of incorporation provided that the government of the University was vested in the Board of Regents which is elected by the legislature. The University was created as a body corporate which has been described as a highly autonomous body. Early case law illustrates that, many times when the legislature enacted legislation with the purpose of exercising control over the management of the University, the legislation has been declared unconstitutional because of the body corporate status. In *University of Minnesota v. Chase,* the Supreme Court said that article 13, section 3, of the constitution prohibited the legislature from supervising the finances of the University.[2]

The territorial act of incorporation provided that the Regents of Minnesota have the power to sue or be sued, to contract or be contracted with, and to enact laws for the government of the University. Territorial laws 1851, c. 3. Further, the Supreme Court of Minnesota has interpreted the territorial laws as giving the University the power to manage its finances without legislative control,[3] to construct dormitories on campus without legislative approval,[4] and to have its decisions concerning the management of its educational affairs free from judicial review.[5]

The State Legislature has also acted to give the Board of Regents additional rights and control over the governing of the University. The University may accept, in trust or otherwise, any gift, grant, bequest or devise and may hold, manage or invest same at its discretion. Minn.Stat. 137.01.

Pursuant to section 137.022 of the Minnesota Statutes, the securities and cash previously held in the state treasury credited to the University was transferred to a permanent University fund. This fund was put in complete control of the Board of Regents subject only to the requirement that if the investment be in the bonds of any county, school district, city or town of this state and in first mortgage liens secured upon improved and cultivated farm lands, it must first be approved by the Board of Investment. Minn.Const., art. 11, § 9. The University was granted power of eminent domain as a corporate entity to use at its discretion. It was determined by an opinion of the Attorney General in 1929 that the University of Minnesota may take such measures as are reasonably necessary to protect its property and cannot be controlled by the legislature. Op.Atty.Gen. 359–A–11, November 4, 1929.

The University does receive appropriations from the State. The Commissioner of Finance, however, cannot make a direct appropriation to the University except for University buildings and the University Hospital unless the University shows that its aggregate balances in the temporary investment pool, cash or separate investments, resulting from all state maintenance and special appropriations, do not exceed 7,000,000 dollars. Minn.Stat. 137.025.

The foregoing discussion illustrates a long history of case law and statutory law which depicts the University of Minnesota as being quite autonomous from the State.

---

2. See also: Op.Atty.Gen., 618–A–Z March 16, 1954 (proposed legislation to have Board of Regents' meetings open to the public would conflict with the constitution putting sole power in the Board of Regents).

   The Board of Regents' control over its finances is very similar to the University of Delaware which was determined not to be covered by state immunity. *Gordensteins v. University of Delaware,* 381 F.Supp. 781 (D.Del.1974).

3. *University of Minnesota v. Chase,* 175 Minn. 259, 220 N.W. 951 (1928); see also *Regents of University of Minnesota v. Lord,* 257 N.W.2d 796 (Minn.1977) (acknowledge that the only method for the state to put restrictions of the

University's fiscal management is by putting restrictions on appropriations by the state. These restrictions must be reasonable and not interfere with the university's management authority).

4. *Fanning v. University of Minnesota,* 183 Minn. 222, 236 N.W. 217 (1931).

5. *Gleason v. University of Minnesota,* 104 Minn. 359, 116 N.W. 650 (1908).

   Although decisions by the university are not per se subject to judicial review, if actions are determined to be arbitrary and capricious, they may be reviewed. *Abbariao v. Hamline University School of Law,* 258 N.W.2d 108 (1977).

More recent court battles between the University and the State illustrate this as well.[6] This alone, however, does not dictate whether the University is covered by the State's sovereign immunity. *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 308 (8th Cir.1978). The principal deciding factor is whether any judgment rendered in this lawsuit will be paid by the state. *Vaughn v. Regents of University of California,* 504 F.Supp. 1349, 1353 (E.D.Cal.1981). This requires an examination of the funding of the University. The University funding consists of tuition and fees, federal appropriations, state appropriations, federal grants and contracts, state grants and contracts, private gifts, grants and contracts, endowment income, investment income and other income. Of the unrestricted funds, those over which the University has direct unlimited control, state appropriations make up approximately 36% of the funding. (University of Minnesota Annual Report for 1981, published March 1982.) Any supplemental funding to be made by the Commissioner of Finance is limited to those situations where the University's resources go below a prescribed level. Minn.Stat. 137.-025.

In other cases in which the status of a state university vis a vis the eleventh amendment was explored, regardless of the fact that the university was determined to be highly autonomous, if the court found that the state in reality would be responsible for the judgment, the University was granted eleventh amendment immunity.[7] Conversely, where the real party to pay the possible judgment is clearly not the state,

there should be a strong presumption that the university would not be granted the eleventh amendment immunity, particularly where the university is found to have a high degree of autonomy. In this case, the State of Minnesota would not be required to pay a judgment since the University has insurance which covers this very claim. Defendants' Answer 1 to Plaintiff's Interrogatory. In addition, the existence of such insurance is a further indication of the great deal of fiscal responsibility held by the University for its own actions.

■ Given the foregoing discussion, it is the opinion of this court that the Minnesota constitution has significantly put the University out of reach of the control of the state and that the legislature has further removed itself from a position of control over the University.[8] In addition, through the giving of fiscal control to the University by the legislature and through actions by the University itself, the fiscal responsibility for the University's actions does not lie with the state.

The University cites the decision of the Court of Appeals for the Eighth Circuit in *Walstad v. University of Minnesota,* 442 F.2d 634 (8th Cir.1971), for the proposition that the University is an instrumentality of the state and therefore immune from suit. *Walstad* was a case involving a malpractice action against the University Hospitals. While Justice Gibson, in *Walstad,* writing for a three-judge panel, stated that by article III, § 3, of the Minnesota Constitution, the University of Minnesota was an instrumentality of the state, nowhere in the opinion does Justice Gibson specifically describe

**6.** *Regents of the University of Minnesota v. Lord,* 257 N.W.2d 796 (Minn.1977). In this case, the University challenged the state designer selection board act, Minn.Stat. 16.821 to 16.827, as applied to the University. This legislation provided for a board of designers to oversee construction projects achieved through state appropriations. The University accepted the appropriations but refused to abide by the board of designers restriction to the appropriation.

**7.** *Vaughn v. Regents of University of California,* 504 F.Supp. 1349 (E.D.Cal.1981); *Weisbrod v. Michigan State University,* 495 F.Supp.

1347, 1357 (W.D.Mich.1980); *Jacobs v. College of William and Mary,* 495 F.Supp. 183 (E.D.Va. 1980).

**8.** A further indication of the University's fiscal independence from the state is the degree of private contributions it receives. A recent national study showed that the University of Minnesota ranks 7th among the nation's colleges and universities in financial contributions. Only one public university, the University of California at Los Angeles, topped the figure of 54.8 million which the University of Minnesota raised in 1981–82. April 28, 1983 Star Tribune.

what type of instrumentality the University is, vis a vis, the eleventh amendment. The discussion of the University and its relation to the state related to the specific state statute preserving tort immunity and whether the University should also enjoy that immunity from actions by patients of state hospitals.[9] Further, the *Walstad* opinion does not take into account issues that now, by the terms of current case law, must be resolved before an entity associated with the state can be granted the status of sharing a state's immunity. Specifically whether an entity can share a state's eleventh amendment immunity "depends at least in part upon the nature of the entity created by the state law." Foremost in this analysis is whether any judgment received would be paid from the State Treasury.

In addition, the University cites two recent cases by Judge Alsop and Judge Magnuson holding that the University was an agency for the purposes of the eleventh amendment immunity. These decisions lack the discussion and analysis necessary for this court to be persuaded to retreat from its earlier decision in *Rajender*.

Since this court finds that the University is not covered under the state's sovereign immunity, it is unnecessary for this court to determine whether there has been a waiver of such immunity. If there is such a time where the University presents facts which persuade this court to reconsider its decision, the question of waiver will be explored.

Given the foregoing discussion, the defendants' motion for summary judgment based on eleventh amendment immunity is denied.

### III.

Defendants' third ground for dismissal is that plaintiff's allegations of injury are all too speculative and vague to afford relief and she therefore lacks standing to bring suit. At this time, plaintiff has not had an opportunity to support her allegations of injury and this court finds it would be inappropriate to dismiss on such grounds on a motion for summary judgment.

In addition, defendants' reliance on the two cases cited in their brief is misplaced. The first case is *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The Court, in *Duke,* viewed the standing from a very different perspective than that presented by defendants. Justice Burger, writing for the Court, was primarily concerned with a bifurcated approach to standing; that is, the Court in *Duke* set the standard for standing as "the personal stake standard." The Court then broke this term down into two parts: "A distinct and palpable injury" and "a fairly-traceable causal connection between the claimed injury and the challenged conduct." *Duke,* 438 U.S. at 72, 98 S.Ct. at 2630. Plaintiff has alleged facts sufficient to meet this test of standing; she has alleged harm with which all courts dealing with general tort actions are familiar.

Defendants' reliance on *Alexander v. Yale University,* 631 F.2d 178, (2d Cir.1980), is without merit. The case, by its own terms, is very limiting and is, in any event, easily distinguished from the case at bar. In *Alexander,* the flaw described by the court was not particularly in the type of harm alleged as defendant represents—indeed, the court specifically mentions in its opinion that the harm associated with deprivation of extra-curricular activities can give rise to a palpable injury—but, rather, with the simple requirement that when the injuries alleged relate to an activity removed from the ordinary educational process in a case under Title IX, more detailed allegations of the injuries suffered as a result of the deprivation are required. However, the Court specifically points out that Title IX recognizes that the loss of

**9.** Later in *Stein v. Regents of the University of Minnesota,* 282 N.W.2d 552 (Minn.1979), the Minnesota Supreme Court determined that the University of Minnesota did not enjoy tort immunity because the operation of the hospital was a proprietary activity and not a governmental activity.

educational benefits is a significant injury redressable by law.

Plaintiff has specifically alleged loss of such educational benefits and by the terms of *Alexander v. Yale University* is entitled to the assumption that such a loss is a significant injury. Defendants' motion is therefore denied.

Although this court denies defendants' motion on this ground, the court admits that the plaintiff does not present a strong factual basis for her claim. Absent any further showing by the plaintiff, this case may be ripe for summary judgment. However, the issues raised on these motions do not involve the factual basis for the complaint and raise serious constitutional questions. For the purpose of these motions, the court assumes that plaintiff has stated a valid claim.

## IV.

Defendants' fourth ground for dismissal is that plaintiff's second cause of action should be dismissed because it does not state a claim for violation of the Minnesota Data Practices Act. This court agrees.

Plaintiff alleges that defendant Parks distributed to other students a copy of a writing sample she wrote with comments on it. She alleges that this act violated Minn. Stat. § 15.1611 *et seq.*, the Minnesota Data Practices Act. This claim is wrong because plaintiff's writing sample is not information deemed "private" by the Data Practices Act. Section 15.1693 defines "educational data" as "data on individuals maintained by a public educational agency or institution or by a person acting for the agency or institution which relates to a student." A writing sample used for instructional purposes is neither "data on individuals" nor "maintained" by the institution. Furthermore, a rule which makes distribution to a class of a student's writing sample a violation of the Act would be unenforceable as a violation of academic freedom. *See generally Sterzing v. Fort Bend Independent School District,* 376 F.Supp. 657, 662 (S.D.Tex.1972), *vacated on other grounds,* 496 F.2d 92 (5th Cir.1974).

Given the foregoing discussion, this court grants defendant's motion to dismiss plaintiff's second cause of action.

## ORDER

IT IS ORDERED That defendants' motion for summary judgment as to Count I is denied and as to Count II is granted.