**PHARMACEUTICAL AND DIAGNOSTIC SERVICES, INC., a Utah corporation, Plaintiff,**

v.

**The UNIVERSITY OF UTAH, a body politic and corporate, et al., Defendants.**

Civ. No. 88–C–807 J.

United States District Court, D. Utah, C.D.

June 26, 1990.

Stanford B. Owen, Douglas B. Cannon, Fabian & Clendenin, Salt Lake City, Utah, for plaintiff.

Richard D. Burbidge, Stephen B. Mitchell, Burbidge & Mitchell, Salt Lake City, Utah, Robert K. Coulter, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

On September 12, 1988, plaintiff Pharmaceutical and Diagnostic Services, Inc. ("PDS") filed a complaint in this court against the University of Utah, Intermountain Radiopharmacy, the Utah State Board of Regents, and David Bragg, Chairman of the Department of Radiology of the University of Utah (the "University defendants"),[1] seeking declaratory relief and damages for alleged federal and state antitrust violations, unfair competition, and other state law violations. On February 17, 1989, PDS filed a first amended com-

---

**1.** Throughout this opinion the court uses the term "University defendants" to refer to The University of Utah, Intermountain Radiopharmacy, the State Board of Regents, and all those persons (including David Bragg in his official capacity) named in PDS's first amended complaint who are affiliated with the University of Utah and who are sued in their official capacities.

plaint,[2] seeking similar declaratory, injunctive, and monetary relief and adding as defendants additional University officials.[3]

On July 13, 1989, the University defendants filed a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Following the parties' submission of supporting, opposing, and reply memoranda, the court, on November 22, 1989, heard oral argument on the University defendants' motion to dismiss and took the motion under advisement. Having considered fully the pleadings, the parties' oral and written arguments, and the relevant law, the court now grants in most aspects the University defendants' motion to dismiss. PDS's remedy, if any, must be found before a state tribunal.

## I. Facts

The relevant facts are straightforward. In 1973, the University of Utah Colleges of Pharmacy and Medicine jointly established a program known as Intermountain Radiopharmacy ("IRP"). The University designed IRP to promote teaching and research. IRP is operated presently as a radiopharmacy, which involves the manufacture and sale of radiopharmaceuticals used in diagnostic imaging and therapeutic application by hospitals, clinics, and other institutions. William Baker operated IRP from its inception in 1973 until 1986. In 1986, Baker left IRP to organize PDS, a Utah corporation which has operated as a privately owned radiopharmacy since January 1, 1987. Baker is now President of and a shareholder in PDS.

PDS alleges in its complaint that IRP does not function primarily as a teaching and research institution. Instead, PDS maintains that IRP operates as a commercial, profit-making enterprise, in direct competition with PDS and in violation of federal and state law and University policy. PDS further alleges that the University defendants compete unfairly and illegally against PDS by using state-owned equipment in furthering IRP's "business," by refusing to deal with PDS, by offering goods and services at or below cost in violation of state and federal law, and by using illegal and void contracts to compete.

Based upon these allegations, PDS has brought federal antitrust claims against IRP under section 1 of the Sherman Act, 15 U.S.C. § 1, and sections 3 and 16 of the Clayton Act, 15 U.S.C. §§ 14, 26. PDS has also brought claims under Utah antitrust law, the Utah Administrative Code, the Utah Unfair Practices Act, and the common law of unfair competition and intentional interference with economic relations.

The University defendants have moved to dismiss PDS's claims on a number of separate grounds, including Eleventh Amendment immunity, the Utah Governmental Immunity Act, *Parker v. Brown* antitrust immunity, failure to exhaust administrative remedies, and failure to state a claim. In this opinion, the court grants the University defendants' motion to dismiss based on Eleventh Amendment immunity and on *Parker* antitrust immunity.

## II. Eleventh Amendment Immunity

The University defendants' motion to dismiss hinges primarily on the Eleventh Amendment to the United States Constitution.[4] The Eleventh Amendment long has stood for the principle that federal courts

---

**2.** Throughout the remainder of this opinion, the term "the complaint" refers to PDS's first amended complaint.

**3.** PDS's complaint also named as defendants the United States of America, Secretary of the Treasury Nicholas Brady, and Internal Revenue Service Commissioner Laurence Gibbs (the "federal defendants"). PDS sought to enjoin the federal defendants from continuing to grant the University of Utah tax exempt status pursuant to 26 U.S.C. § 501(c)(3), or in the alternative, to require the federal defendants to assess and collect taxes allegedly due as a result of the sale of radiopharmaceuticals at a profit. On September-

ber 14, 1989, the court granted the federal defendants' motion to dismiss, holding that PDS lacked standing to seek relief against the federal defendants.

**4.** The language of the Eleventh Amendment provides as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

are without authority to entertain suits by private parties against a state or its agencies without the state's consent. *See Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 462, 65 S.Ct. 347, 349, 89 L.Ed. 389 (1945); *Hans v. Louisiana,* 134 U.S. 1, 14–15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). In their motion to dismiss, the University defendants argue that IRP, the Board of Regents, and other University officials sued in their official capacities are arms of the State of Utah and are thus immune from suit in federal court. PDS concedes the Eleventh Amendment's general effect, but insists that the University of Utah is not an arm of the state for purposes of Eleventh Amendment immunity. In the alternative, PDS argues that, before passing upon whether the University is an arm of the state, the court should allow further discovery into the nature of the relationship between the University of Utah, the Board of Regents, IRP, and the state.

As is noted above, both sides agree that the Eleventh Amendment generally protects a state from suit in federal court without the state's consent.[5] This court, then, must resolve the specific question whether the University of Utah is "the state" for purposes of the Eleventh Amendment. It is well-settled that the Eleventh Amendment applies to a "state agency, functioning as an arm, an alter ego of the state." *Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir.1971) (University of Kansas is the state for purposes of Eleventh Amendment immunity). And in determining the status of the state agency, the court must look to applicable state law. *Id.* Thus, this court looks to Utah law and finds that the University of Utah is an arm of the state for Eleventh Amendment purposes.

This court's review of Utah law clearly indicates that the University of Utah should be considered an arm of the state. The statutory foundation upon which the University is constructed gives the state virtually exclusive control over University governance.[6] The State Board of Regents is endowed with "the power to govern the state system of higher education consistent with state law" and, to that end, "is vested with the control, management, and supervision of [the University of Utah]." Utah Code Ann. §§ 53B–1–101(2), –103(2) (1989). The governor of the state, with the consent of the Senate, appoints fifteen of the Board's sixteen members. Utah Code Ann. § 53B–1–104(1) (1989). The Board is required by law to account to the state by submitting "an annual report of its activities to the governor and to the Legislature." Utah Code Ann. § 53B–1–107 (1989). In addition, eight of ten members of the University of Utah's Institutional Council (and of each state institution of higher education) are appointed by the governor, and the Council is charged with fund-raising, public relations, and other administrative responsibilities. Utah Code Ann. §§ 53B–2–103, –104(1) (1989). The Institutional Council, in turn, consults with the Board of Regents before the Board takes action on matters pertaining to the University of Utah. Utah Code Ann. § 53B–2–105 (1989). Thus, the Utah Legislature has established the University of Utah as an institution squarely within the state's control. The University is not, as PDS suggests, akin to a municipal corporation or political subdivision of the state. *Cf. Mount Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (Ohio law provides that local Board of Education is treated as political subdivision and not as an arm of the state).

The Utah Supreme Court also has taken the view that the University of Utah is an institution firmly within the state's control.

---

**5.** There is no suggestion here that the state has consented to suit against the University of Utah by expressly waiving its immunity.

**6.** In addition, the Utah Governmental Immunity Act defines the term "State" to include "any office, department, agency, authority, commission, *board,* institution, hospital, college, *univer-*

*sity, or other instrumentality of the state."* Utah Code Ann. § 63–30–2(9) (1986 & 1988 Supp.). Hence, in denoting those entities protected by state law immunity, the Legislature specifically considered the University of Utah and Board of Regents instrumentalities of the state.

In *University of Utah v. Board of Examiners,* 4 Utah 2d 408, 295 P.2d 348 (1956), the Supreme Court examined the intent of the Utah Constitution's framers and reversed the district court's ruling that the Utah Constitution establishes the University as a constitutional corporation free from the Legislature's control. The Court relied upon one of its earlier opinions and reasoned that:

> [W]hen all of the provisions of law, which in some way relate to and affect the government of the university are considered and construed together, it is made very clear that the corporation designated the University of Utah was created and exists for the sole purpose of more conveniently governing and conducting the educational institution called the "University." *The university is clearly a state institution,* and is so treated, since the members constituting its governing board are all appointed by the Governor with the consent of the senate, and the board regularly reports to the Governor. *Moreover, the corporation holds all the property in trust merely. In fact the property belongs to the state of Utah.*

*Id.* 295 P.2d at 364 (quoting *State v. Candland,* 36 Utah 406, 104 P. 285, 293 (1909)) (emphasis added). Thus, the state's highest court [7] has indicated in unequivocal terms that the University acts as a state-created, state-financed entity with a severely constricted degree of autonomy. Any judgment against the University necessarily would be satisfied, even if indirectly, from state resources. And "[w]here the recovery sought by the parties would 'expend itself on the public treasury or domain ...,' the action is essentially one against the State...." [8] *Prebble v. Brodrick,* 535 F.2d 605, 610 (10th Cir.1976) (citations omitted) (University of Wyoming is a state instrumentality for purposes of Eleventh Amendment immunity).

Given the University's status under Utah law,[9] this court is bound by the view of the Tenth Circuit [10] and adopts the view of a majority of other courts [11] that have treated state universities as arms of the state for Eleventh Amendment purposes. The University of Utah partakes of Eleventh Amendment immunity as an instrumentali-

---

7. PDS urges the court to adopt an opinion of the Utah Attorney General to the effect that the University is not an arm of the state for purposes of Eleventh Amendment immunity. *See* Op.Att'y Gen. No. 87–001 (May 8, 1987) at 46–47. The opinion, though informative, is not authoritative. This court is unwilling to give greater credence to the Attorney General's non-binding opinion than to Utah statutory structure and the Utah Supreme Court's construction of that structure.

8. The court specifically rejects PDS's suggestion that a judgment against the University is not necessarily a judgment against the state. While it may be true that a significant proportion of University funding comes from non-state sources, it is a fiction to suggest that a judgment against the University will not ultimately be made up through state appropriations. Any use of non-state funds to satisfy a judgment inevitably will necessitate increased state outlays. *See Ferguson v. Greater Pocatello Chamber of Commerce,* 647 F.Supp. 190, 192 (D.Idaho 1985) (Idaho State University is immune under Eleventh Amendment since judgment would ultimately "impact" on state treasury).

9. PDS insists that the court should at least allow factual discovery into the relationship between IRP, the University, and the state. And indeed it is true that "[e]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances." *Soni v. Board of Trustees,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). In this case, however, the court need only look to the peculiarities of Utah law. Utah law, as distinguished from any detailed factual inquiry, clearly renders the University of Utah an arm of the state. Factual discovery would in no way alter the state law basis of this court's conclusion. *See Prebble,* 535 F.2d at 610 (relying on the Wyoming Constitution and statutes to hold that University of Wyoming is immune under Eleventh Amendment).

10. *See Prebble,* 535 F.2d at 610 (University of Wyoming); *Brennan,* 451 F.2d at 1290–91 (University of Kansas).

11. The court in *Durham .v. Parks,* 564 F.Supp. 244, 246 (D.Minn.1983), surveyed a number of cases that dealt with the status of state universities under the Eleventh Amendment. The *Durham* court concluded that "[t]he majority of courts which have considered the 'alter ego' relationship of a state university to its state have concluded that a suit against the university is a suit against the state for the purposes of the eleventh amendment." *Id.*

ty of the state. This court is without authority to award PDS damages against the University, its officers, or IRP.

### III. Injunctive Relief

The court's determination that the University of Utah is an arm of the state for Eleventh Amendment purposes does not dispose entirely of PDS's claims. PDS has sought injunctive relief against the University defendants, specifically asking this court to order IRP to cease operations which are alleged to violate federal and state law. Thus, the court examines the availability to PDS of injunctive relief and concludes that this court may not enjoin IRP's activities based upon either federal or state law grounds.

### A. *Federal Law*

The court turns first to the availability of injunctive relief under federal law. It is well-settled that the Eleventh Amendment does not bar federal courts from issuing injunctive relief against a state based upon violations of federal law. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That relief, if any, may be founded upon violations of federal constitutional or statutory law, but is limited to *prospective* injunctive relief. *See Edelman v. Jordan,* 415 U.S. 651, 666–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

In its complaint, PDS alleges that the University defendants operate IRP in violation of federal antitrust law. PDS seeks an order from this court enjoining the University defendants from the alleged continuing violation of both the Sherman Act and the Clayton Act. PDS has raised no other federal law claim for injunctive relief.[12] The University defendants counter that they are entitled to immunity from

federal antitrust laws because they are the state acting in its sovereign capacity. The University defendants rely upon the landmark case of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and subsequent cases interpreting it. They argue that they are officers acting within the executive branch of state government, and as such, that they are acting for and on behalf of Utah in its sovereign capacity.

*Parker* and its progeny have established the general proposition that states acting in their sovereign capacities are exempt from federal antitrust laws. In order to qualify for antitrust immunity, an entity must demonstrate either that it is the state acting in its sovereign capacity *or* that it is acting pursuant to a "clearly articulated and affirmatively expressed state policy." *Hoover v. Ronwin,* 466 U.S. 558, 568–69, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984). This court does not reach the second prong of this test because it concludes that the University defendants constitute the state acting in its sovereign capacity. As such, they are entitled to *Parker* antitrust immunity.

It is clear under the *Parker* immunity doctrine that the legislative and judicial branches of state government act as the state in its sovereign capacity. *See Parker,* 317 U.S. at 351, 63 S.Ct. at 313 (legislature acts as the state); *Bates v. State Bar of Arizona,* 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977) (state supreme court acting in legislative capacity acts as the state). In deciding that the University defendants are acting as the state for purposes of *Parker* immunity, this court adopts the holdings of the Fifth and Ninth Circuits[13] that the executive

---

12. Count II of PDS's complaint alleges that PDS is entitled to a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and the federal Declaratory Judgment Act, 28 U.S.C. § 2201. However, the declaratory judgment sought in Count II is based on state law violations, and the Declaratory Judgment Act does not extend the subject matter jurisdiction of federal courts. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2766 (2d ed. 1983) ("[t]here must be an independent basis of [federal] jurisdiction, ... be-

fore a federal court may entertain a declaratory judgment action"). Thus, the only alleged federal law bases for injunctive relief are the Sherman and Clayton Acts.

13. The United States Supreme Court has yet to pass upon the specific question whether state executive agencies are entitled to *Parker* antitrust immunity. *See Hoover,* 466 U.S. at 568 n. 17, 104 S.Ct. at 1995 n. 17, 80 L.Ed.2d 590. Neither has the Tenth Circuit treated that specific question.

branch of state government is no less entitled to antitrust immunity than are the legislative and judicial branches. *See Charley's Taxi Radio Dispatch v. SIDA of Hawaii*, 810 F.2d 869, 874–76 (9th Cir.1987) (Hawaii Department of Transportation entitled to antitrust immunity as part of executive branch); *Deak–Perera Hawaii, Inc. v. Department of Transp.*, 745 F.2d 1281, 1282 (9th Cir.1984) (similar conclusion); *Saenz v. University Interscholastic League*, 487 F.2d 1026, 1027–28 (5th Cir. 1973) (division of University of Texas entitled to antitrust immunity). This court discerns no sound reason for distinguishing state executive agencies from their legislative and judicial counterparts—"regardless of whether [the executive agencies'] particular actions or their anticompetitive effects were contemplated by the legislature." *Charley's Taxi*, 810 F.2d at 876. *See also* Areeda, *Antitrust Immunity for "State Action" After Lafayette*, 95 Harv.L.Rev. 435, 445 n. 49 (1981) ("delegation of governmental powers necessarily includes the discretion to make decisions not compelled by the legislature").

Further, as was true in the Eleventh Amendment context, there can be little question that the University defendants act as the state in its sovereign capacity for purposes of *Parker* antitrust immunity. The Board of Regents is appointed by the governor. The Board accounts annually to the governor and the Legislature. In *Saenz*, 487 F.2d at 1027–28, the Fifth Circuit reasoned that the University Interscholastic League and its officials, as part of the Extension Division of the University of Texas, were entitled to antitrust immunity as the state acting in its sovereign capacity. Such is also true of IRP, the Board of Regents, and other University officials in this case. They act within the state executive branch, under statutorily mandated supervision, and thus come within the ambit of *Parker* antitrust immunity.[14]

PDS contends, finally, that even if the University defendants act as the state in the executive branch, their activities through IRP are not those of the sovereign because they exceed the authority conferred under the Utah Constitution and Utah statutes. This court does not—and need not—decide whether IRP's activities run afoul of specific provisions of Utah law. As the University defendants correctly point out, even "[t]he constitutional invalidity of the attempted state [activity] is not an appropriate basis for disregarding [*Parker*] state action immunity." *Lease Lights, Inc. v. Public Serv. Co.*, 849 F.2d 1330, 1334 (10th Cir.1988) (citing *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985)). Indeed, *Parker* immunity is based upon principles of federalism, and " '[o]rdinary' errors or abuses in the administration of powers conferred by the state should be left for state tribunals to control." Areeda, *Antitrust Immunity for "State Action" After Lafayette*, 95 Harv.L.Rev. 435, 453 (1981). The University defendants' activities do not violate Utah law (if at all) to the degree that *Parker* immunity is defeated. This court will not enjoin the University defendants on the basis of federal antitrust law.

### B. *State Law*

■ PDS also seeks prospective injunctive relief against the University defendants based upon a number of separate state law grounds, including the Utah Administrative Code, the Utah Unfair Practices Act, and Utah antitrust law. The University defendants respond that, under the Supreme Court's holding in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment prohibits the

---

**14.** Again, PDS would have the court rely upon an Opinion of the Utah Attorney General, which concluded that the University of Utah was not the state acting in its sovereign capacity for purposes of *Parker* antitrust immunity. *See* Op. Att'y Gen. No. 85–002 (Oct. 21 1985). However, the court notes once again that the opinion is non-binding. The opinion does not even mention the Fifth and Ninth Circuit cases decided before it was rendered, and it could not have considered the *Charley's Taxi* decision because it was decided after the Attorney General opinion was rendered.

court from enjoining an instrumentality of the state based upon state law, unless the alleged conduct is ultra vires or "without any authority whatever." [15] *Id.* at 101 n. 11, 104 S.Ct. at 1993 n. 11.

This court determined, *supra*, that the University is an arm of the state and thus enjoys Eleventh Amendment immunity. All that remains, then, is an inquiry into whether the University defendants' activities through IRP are supported by any "colorable basis" of authority. *Id.* That determination is simple. The Board of Regents is given full authority by the Legislature to decide what programs and departments will be established at the University of Utah. Accordingly, the Board has authorized the operation of IRP within the Colleges of Medicine and Pharmacy. It may be that this authorization misconstrues provisions of Utah law, or that the actual practices of IRP do not comport fully with Utah law,[16] but this court cannot accept PDS's contention that IRP is operated without any "colorable basis" of authority.[17] An ultra vires claim must be founded upon an "officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949). The University defendants may or may not have misinterpreted the breadth of their authority, but they have not acted here without any authority whatever. The court will not enjoin

---

**15.** The University defendants suggest that *Pennhurst* may have entirely eliminated the ultra vires exception. It is true that the *Pennhurst* Court did "question the continued vitality of the ultra vires doctrine in the Eleventh Amendment context." 465 U.S. at 114 n. 25, 104 S.Ct. at 1998 n. 25. The Court concluded that "to the extent the [ultra vires] doctrine is consistent with the analysis of this opinion, it is a very narrow exception...." *Id.*

This court need not pass upon the continued existence or nonexistence of the ultra vires doctrine because it holds that the University defendants' activities are not "without any authority whatever." *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697, 102 S.Ct. 3304, 3312, 73 L.Ed.2d 1057 (1982).

**16.** At issue are the provisions of Board of Regents Rule 765–555, which PDS suggests have been incorporated into the Utah Administrative Code. Utah Code Ann. §§ 63–46a–2, –16 (1989). Rule 765–555 is entitled "Policy on Colleges and Universities Providing Facilities, Goods and Services in Competition with Private Enterprise." The Rule provides in pertinent part:

**R765–555–4. Policy**

   \*    \*    \*    \*    \*    \*

4.3. An institution shall not provide services to persons other than members of the campus community unless:

4.3.1. The service offers a substantial and valuable educational or research experience for registered students and faculty;

4.3.2. The service fulfills the institution's public service mission;

4.3.3. The service is incidental to the ordinary and authorized function of a campus entity, i.e. occasional sales by bookstores, food services, etc., to campus visitors;

4.3.4. The service consists of recreational, cultural, and athletic events; health services and medical treatment; public service radio and TV broadcasting; events or functions which have as their principal purposes the improvement of relations between the institutions and the general public; and sales of contributed services, if related to fund raising activities;

4.3.5. The equivalent service is not available in the local area; or

4.3.6. The service to persons not members of the campus community has been specifically authorized by the State Board of Regents.

   \*    \*    \*    \*    \*    \*

4.6. Exceptions to this policy may be authorized by the State Board of Regents if it determines that an exception is clearly in the best interests of the public.

**17.** It is arguable whether the University defendants' activities through IRP violate Rule 765–555 or other provisions of Utah law at all. Even so, under *Pennhurst*'s Eleventh Amendment analysis, the court does not focus on the violation or nonviolation of state law. Rather, the query is whether the activities are "without any authority whatever." *Pennhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. at 1993 n. 11. In this case it is clear that the University defendants' activities are not without any authority whatever.

PDS's reliance on *Miami Univ. Assoc. Student Gov't v. Shriver,* 735 F.2d 201 (6th Cir.1984), is unavailing. In that case, the Sixth Circuit, in dicta, merely directed the district court to consider on remand the effect of *Pennhurst* on its ability to order compliance with state law. The court hinted, without holding, that Miami University officials' attempts to enforce a student "no-car" policy off-campus may be without any authority whatever. *Id.* at 204. The court suggested that the ultra vires doctrine survived *Pennhurst,* but did not hold that the doctrine applied to the facts of the particular case. *Id.*

them based upon alleged violations of state law.

### IV. Relief Against Defendant Bragg in His Individual Capacity

The court turns last to PDS's contention that this court may order relief against defendant David Bragg in his individual capacity. Bragg serves as Chairman of the University's Department of Radiology and is the only defendant sued by PDS in an individual capacity. PDS argues correctly that the Eleventh Amendment and state sovereignty generally provide no immunity to state officers sued in their individual capacities. *See Papasan v. Allain*, 478 U.S. 265, 278 n. 11, 106 S.Ct. 2932, 2940 n. 11, 92 L.Ed.2d 209 (1985). PDS also points out that this result is unchanged even if the state chooses to indemnify its officers. *See Schaefer v. Wilcock*, 676 F.Supp. 1092, 1101 (D.Utah 1987).

Bragg appears to concede that he does not benefit in his individual capacity from Eleventh Amendment immunity. He argues, however, that under Utah law he may not be held personally liable for "acts or omissions occurring during the performance of [his] duties ... *unless it is established that [he] acted or failed to act due to fraud or malice.*" Utah Code Ann. § 63–30–4(4) (1989) (emphasis added). Bragg's position, at least as to Utah law, is supported by Utah Supreme Court decisions interpreting section 63–30–4. *See Lancaster v. Utah State Prison*, 740 P.2d 261, 262 (Utah 1987); *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1339–40 (Utah 1987). The state law claims in PDS's complaint do not allege that Bragg acted through either fraud or malice, and there is little doubt that Bragg's "acts or omissions," if any there were, occurred during the performance of his duties as Chairman of the University's Department of Radiology. The court notes, however, that the "fraud or malice" pleading requirement does not apply to PDS's federal law claims against Bragg in his individual capacity. The parties do not advance—nor will the court embrace—the suggestion that Utah Code section 63–30–4 adds to antitrust law

(or other federal law) a "fraud or malice" pleading requirement.

Thus, the court dismisses without prejudice PDS's state law claims against Bragg in his individual capacity and grants PDS twenty days' leave to amend its complaint to include any properly founded state law allegations of malice or fraud against Bragg. As to the federal law claims against Bragg in his individual capacity, the motion to dismiss is denied.

### V. Conclusion

Based upon the foregoing analysis, the court holds that PDS's remedy against the University defendants, if any, must be obtained in state court. The principles of federalism, as found in the Eleventh Amendment and the *Parker* antitrust immunity doctrine, teach that federal courts must not intrude upon the sovereign domain of the several states. Therefore, the court hereby orders, adjudges, and decrees that PDS's claims against the University defendants in their official capacities are DISMISSED with prejudice. The court further orders, adjudges, and decrees that PDS's state law claims against defendant David Bragg in his individual capacity are DISMISSED without prejudice, and PDS is hereby granted twenty days' leave to amend its complaint to include any properly founded state law claims of fraud or malice against defendant David Bragg in his individual capacity. With respect to PDS's federal law claims against Bragg in his individual capacity, the motion to dismiss is DENIED.

IT IS SO ORDERED.